■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL WORTHY, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Dubin, J.), rendered April 1, 1981, convicting him of burglary in the first degree, robbery in the second degree (two counts), assault in the second degree and criminal mischief in the fourth degree, upon a jury verdict, and sentencing him as a second felony offender to three terms of imprisonment of 7 1/2 to 15 years on the burglary and robbery convictions, a term of imprisonment of 3 1/2 to 7 years on the assault conviction, and a term

of imprisonment of one year on the conviction for criminal mischief in the fourth degree, all terms to be served concurrently.

Judgment reversed, on the law and the facts, and new trial ordered.

Upon the record, we conclude that defense counsel's performance was so inadequate that defendant was deprived of the "meaningful representation" of counsel to which he is constitutionally entitled (*People v Baldi,* 54 NY2d 137, 147; *see, People v Zaborski,* 59 NY2d 863, 865; *People v Karamanites,* 104 AD2d 899; *Strickland v Washington,* 466 US 668; *cf. People v Abdullah,* 100 AD2d 550, 551).

Among the multitude of counsel's failures which we perceive on the record as a whole, we note, with particular concern, counsel's inadequate summation, which failed to review the evidence, to focus the jury on the critical identification issue, and to point out the weaknesses in the case against his codefendant, and counsel's inadequate performance at the *Wade* hearing.

The charges against defendant stem from an incident which occurred in the early morning hours of March 7, 1980, when at least two individuals broke into the two-story residence of 66-year-old Conrada Vega and her blind, 82-year-old husband, Leo Vega. Mr. Vega was physically beaten and Mrs. Vega's life was threatened by the assailants, who stole currency and other valuables.

Three separate indictments were handed down against defendant, codefendant Adams and one Jeffery Williams, respectively. Adams, who stood trial with defendant, was acquitted of all charges. Prior to trial, Williams pleaded guilty to an unrelated indictment in full satisfaction of that indictment and the indictment in the instant case.

Mrs. Vega told the police that she observed one of the perpetrators for approximately 15 to 30 minutes while he was in her bedroom, and that she heard him referred to as "Michael" by his accomplice. While she was unable to positively identify defendant as this individual from a photographic array, she did identify defendant in person when he appeared in court on an unrelated matter. She was unable to make any identification of the second perpetrator, explaining that she only observed a portion of his face. Fingerprints taken from the Vegas' residence however matched those of Adams.

During the trial no witnesses testified on behalf of defen-

dant. Adams, on the other hand, produced a witness who stated that he was assisted by Adams and others in moving furniture from the Vegas' upstairs bedroom about one year prior to the burglary. Adams' attorney argued that the fingerprints found by the police at the scene were left there by Adams when he was there to move the furniture. In view of their acquittal of Adams, the jury apparently accorded great weight to the testimony of Adams' witness.

Defense counsel's summation consisted largely of his irrelevant personal opinion of the innocence of his client. Among other things, he failed to focus attention on the weakness of the complainant's identification testimony and the fact that the People indicted three individuals for a crime which, according to the complainant, involved only two perpetrators.

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshall the evidence for each side before submission of the case to judgment" (*Herring v New York*, 422 US 853, 862). In the case at bar, counsel's patently inadequate summation was the equivalent of no summation at all, thereby depriving defendant of his constitutionality protected right to a closing argument.

The record also indicates that Mrs. Vega was the only witness to testify at the *Wade* hearing. Although she testified that she identified defendant from a photograph array, counsel failed to cross-examine her concerning a police DD5 report which stated that she could not positively identify defendant. Moreover, counsel made no effort to have the photographic array nor the police officer who conducted the identification procedures produced at the hearing.

Based upon these and a multitude of other failures, defendant was deprived of a meaningful representation (*People v Baldi*, 54 NY2d 137, *supra*). Accordingly, we reverse the judgment and order a new trial.

In view of our disposition, we need not address defendant's remaining contention. Lazer, J. P., Mangano, Brown and O'Connor, JJ., concur.