[599 NYS2d 892]

In the Matter of JAMIE TT., Alleged to be an Abused Child. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; TERRY TT., Respondent.

Third Department, July 1, 1993

### APPEARANCES OF COUNSEL

*George R. Wiltsie, Law Guardian,* Elmira, for appellant.

*Learned, Reilly & Learned,* Elmira *(Thomas E. Reilly* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

In December 1991, a child abuse petition was filed in the Family Court by petitioner alleging that Jamie TT., a female child then 13 years old, had been sexually molested by respondent, her adoptive father and the husband of her biological mother. Annexed to the petition was the affidavit of petitioner's investigating caseworker. The affidavit related that Jamie had first disclosed to a school social worker and her guidance counselor in early December 1991 that respondent had fondled her breasts and vagina, that his sexual advances had begun over a year earlier when respondent had asked her to show her breasts to him, and that it had become progressively more intrusive and ultimately intolerable. Both educators spoke well of Jamie as an above-average student of good character and reputation.

Respondent denied the allegations of the petition and the matter proceeded to a fact-finding hearing, in which petitioner was represented by the County Attorney's office and a Law Guardian appeared on Jamie's behalf. The only witness called by petitioner was Jamie, who testified in detail concerning a history of sexual touching by respondent for more than a year, occurring most often on weekday afternoons after school during the one-hour period between respondent's return from work and the mother's return from work. Respondent testified on his own behalf, categorically denying engaging in any sexual abuse of Jamie. At the conclusion of the testimony, Family Court rendered a Bench decision stating that it was unable, subjectively, to resolve whether Jamie or respondent was telling the truth. The court therefore ruled that petitioner had failed in meeting the statutory burden of proving the allegations of the petition by a preponderance of the evidence, and the petition was dismissed. By consent of both parties, temporary custody of Jamie was continued with her grandparents. Petitioner and the Law Guardian appeal.[1]

■ The Law Guardian's first point on appeal appears to be that, in failing to make a credibility determination as to the truth of either Jamie's or respondent's testimony, Family Court somehow abdicated its responsibility as the trier of fact and, therefore, this Court should assume that role or remit the matter for an entire redetermination. We disagree. Concededly, petitioner had the burden to prove the allegations of sexual abuse by a preponderance of the evidence (see, Family Ct Act § 1046 [b] [i]; see also, Matter of Tammie Z., 66 NY2d 1). This placed upon petitioner the risk of nonpersuasion of the trier of fact that the allegations of the abuse petition were more probably true than untrue (see, In re Winship, 397 US 358, 371-372 [Harlan, J., concurring]). Family Court's frank acknowledgment of an inability to resolve the conflict between Jamie's and respondent's testimony left the court in equipoise as to which version of the facts was more probably true. This being so, the court was required to conclude that petitioner had failed to sustain its burden of proof. "If the plaintiff has not succeeded in fairly and reasonably convincing the trier of facts of the truth of his cause, or where he has left the trier of facts *in such doubt as to be unable to decide the controversy,* he has not sustained his cause by a fair preponderance of the evidence" (58 NY Jur 2d, Evidence and Witnesses, § 967, at

---

1. Despite filing a notice of appeal, petitioner chose not to file a brief.

720 [emphasis supplied]; *see, Roberge v Bonner,* 185 NY 265, 269; Richardson, Evidence § 97, at 74 [Prince 10th ed]).

■ Alternatively, the Law Guardian urges that there should be a reversal and a remittal for a new trial because Jamie was denied the effective assistance of counsel at the fact-finding hearing. The threshold issue on this contention is whether Jamie, as the subject of the child abuse petition brought under Family Court Act article 10, had a legally cognizable right to the effective assistance of counsel throughout the proceeding. We conclude that she did. First, New York statutory law guarantees a child, allegedly abused or neglected by a parent, independent legal representation in a Family Court Act article 10 proceeding *(see,* Family Ct Act § 249) based upon a legislative finding that "counsel [for minors in Family Court proceedings] is often indispensable to a practical realization of due process of law and may be helpful in making reasoned determinations of fact and proper orders of disposition" (Family Ct Act § 241).

We are also of the view, however, that the Due Process Clauses of the Federal and State Constitutions *(see,* US Const 14th Amend; NY Const, art I, § 6) mandate that there be *some form* of legal representation of Jamie's interests in the proceedings on the petition. Jamie's liberty interest was clearly at stake. The effect of Family Court's exoneration of respondent was to restore to him the primary right to custody of Jamie.[2] Upon the dismissal of the child abuse petition, decisional law made respondent's right to custody of Jamie superior to third persons, including her grandparents, which could only be overcome by proof of extraordinary circumstances *(see, Matter of Bennett v Jeffreys,* 40 NY2d 543, 549; *Matter of Sickler v Roach,* 169 AD2d 874, 875; *Matter of Bisignano v Walz,* 164 AD2d 317, 318). Thus, custody and control of Jamie by the person she claimed had sexually molested her while in his prior custody were inextricably involved in the proceedings on the abuse petition. Moreover, once custody of her was restored to respondent, he had the right to invoke State sanctions against her in a person in need of supervision proceeding *(see,* Family Ct Act art 7) if Jamie challenged his authority by " 'ungovernab[le]' " behavior or running away (Besharov, Practice Commentary, McKinney's Cons Laws of

---

**2.** Throughout the proceeding, Jamie's mother supported respondent's claim of innocence of the allegations of sexual abuse and she continued to reside with him.

NY, Book 29A, Family Ct Act § 712, at 21). We would be callously ignoring the realities of Jamie's plight during the pendency of this abuse proceeding if we failed to accord her a liberty interest in the outcome of that proceeding, entitling her to the protection of procedural due process.

Applying the three-fold analysis of *Mathews v Eldridge* (424 US 319, 335), we have no hesitancy in concluding that the process due Jamie included effective legal representation of her interests during the child abuse proceedings against respondent. Notably, Jamie had a strong interest in obtaining State intervention to protect her from further abuse and to provide social and psychological services for the eventual rehabilitation of the family unit in an environment safe for her. Furthermore, Jamie's interest in procedural protection was heightened because of the irreconcilably conflicting positions of her and her parents in this litigation *(cf., Parham v J. R.,* 442 US 584, 600-602). The governmental interest in this child abuse proceeding coincided with that of Jamie. As we said in *Matter of Linda C.* (86 AD2d 356, 361), "the interest in protecting children from the infliction of serious physical harm or sexual molestation by a parent is the apotheosis of the State's *parens patriae* role". The appearance of a lawyer to protect Jamie's interests seems clearly necessary to avoid an erroneous outcome unfavorable to Jamie in the proceeding. A fact-finding hearing under Family Court Act article 10 on a sexual abuse charge is a completely adversarial trial with few deviations from the procedures applied in civil and criminal trials. A respondent parent in such a proceeding is afforded the full right to counsel, including assignment of an attorney if indigent *(see,* Family Ct Act § 262 [a] [i]). And, as previously noted, the risk of an erroneous factual determination rejecting Jamie's claim of sexual abuse would be restoration of the custodial rights of the person accused of molesting her, a result we characterized in *Matter of Linda C. (supra,* at 360) as "approach[ing] the level of absolute abhorrence" and the Court of Appeals characterized as "disastrous" *(Matter of Tammie Z.,* 66 NY2d 1, 5, *supra).*

Thus, Jamie had a constitutional as well as a statutory right to legal representation of her interests in the proceedings on the abuse petition. Her constitutional and statutory rights to be represented by counsel were not satisfied merely by the State's supplying a lawyer's physical presence in the courtroom; Jamie was entitled to "adequate" or "effective" legal assistance *(Cuyler v Sullivan,* 446 US 335, 344, 345; *see,*

*Matter of Karl W.,* 168 AD2d 997). No less than an accused in a criminal case, Jamie was entitled to "meaningful representation" *(People v Baldi,* 54 NY2d 137, 147). Effective representation for Jamie included assistance by an attorney who had taken the time to prepare presentation of the law and the facts, and employed basic advocacy skills in support of her interests in the case *(see, People v Droz,* 39 NY2d 457, 462).

Jamie did not receive the effective representation to which she was constitutionally entitled at the fact-finding hearing. In a child protective proceeding under Family Court Act article 10, such as the instant case, where the attorney for the petitioner child protective agency (here the County Attorney) presented the evidence in support of the petition in the first instance, it was the duty of Jamie's court-appointed Law Guardian to insure that the evidence sustaining her allegations of sexual abuse by respondent was fully developed. "As the child's advocate, the law guardian's interest is to insure that, to the greatest extent possible, all relevant facts, expert opinions and records are introduced into evidence. Standards B-1 and B-2 thus encourage the law guardian to be familiar with the possible evidentiary material, and to question and cross-examine witnesses whenever necessary for a full presentation" (Law Guardian Representation Standards [NY St Bar Assn Comm on Juvenile Justice and Child Welfare, 1988], Part III Child Protective Proceedings; Part B: The Fact-Finding Hearing, Commentary, at 145). Here, the presentation of the evidence by the County Attorney clearly required more than a passive role on the part of Jamie's Law Guardian. In a case in which, foreseeably, the outcome inevitably would turn upon a determination of the credibility of Jamie or of respondent, the County Attorney failed to call the numerous witnesses to her out-of-court statements to confirm her testimony *(see,* Family Ct Act § 1046 [a] [vi]), expressly refused to explore the possibility of obtaining validation evidence from an expert witness, admissible to corroborate or bolster Jamie's testimony *(see, Matter of Nicole V.,* 71 NY2d 112, 121), and declined to conduct any cross-examination whatsoever of respondent. The Law Guardian did nothing to make up for these lapses in presentation of the evidence in support of Jamie's allegations. The Law Guardian called no witnesses and engaged in only the most perfunctory cross-examination of respondent, consisting of only three questions, none of which had any bearing on respondent's credibility.

The deficiencies noted cannot be explained as merely losing

trial tactics. No conceivable forensic stratagem could justify the absence of preparation and advocacy skills shown here which in a criminal case would clearly have required reversal *(see, People v Daley,* 172 AD2d 619, 620-621; *People v Echavarria,* 167 AD2d 138, 139-141; *People v Morales,* 118 AD2d 814, 815; *People v Worthy,* 112 AD2d 454, 455-456). The Law Guardian's failure to take an active role in the proceedings is alone sufficient to require reversal *(see, Matter of Elizabeth R.,* 155 AD2d 666, 668).

Consequently, the order dismissing the petition should be reversed and the matter remitted to Family Court for further proceedings, including a new fact-finding hearing.

CASEY, J. (concurring). I agree with the majority that Family Court's order must be reversed and the matter remitted for a new hearing, but there is no need to reach the "effective assistance of counsel" issue.* Family Court purportedly based its dismissal of the petition after the fact-finding hearing upon the conclusion that petitioner had not sustained the burden of proof imposed by Family Court Act § 1046 (b), but it is clear from its decision that Family Court failed to weigh the evidence presented at the hearing and did not engage in fact finding. A proper basis for dismissal of the petition is therefore absent.

It is undisputed that the child's testimony, if credited, established all the necessary elements to meet the definition of an abused child *(see,* Family Ct Act § 1012 [e]). Petitioner, therefore, met the initial burden of going forward with evidence sufficient to establish a prima facie case of abuse and the burden of going forward with proof then shifted to respondent *(see, Matter of Shawniece E.,* 110 AD2d 900), who met that burden by testifying that the incidents testified to by the child did not occur. In these circumstances, with petitioner having submitted evidence which, if credited, would have

---

* The majority's focus on the County Attorney's conduct to determine the effective representation issue is, in my view, unwarranted. The County Attorney represents the interests of petitioner, the party authorized to commence this proceeding *(see,* Family Ct Act § 1032). The Law Guardian represents the interests of the child who is the subject of this proceeding *(see,* Family Ct Act § 241). Although these interests may overlap *(see,* Family Ct Act § 1011), the duties of the County Attorney and the Law Guardian are independent and may require them to pursue divergent roles *(see,* Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 241, at 190-194). In determining whether the child received adequate representation, therefore, the focus should be on what the Law Guardian did or did not do, not the quality of the County Attorney's conduct.

sustained a finding of sexual abuse, Family Court was required to weigh the evidence to determine whether the proof preponderated in petitioner's favor *(see, Matter of Miranda UU.,* 168 AD2d 704, 705), and "[t]here being no physical evidence of abuse, this case turns almost completely on questions of credibility, wherein Family Court's superior vantage point by virtue of being able to hear and observe the witnesses requires great deference by an appellate court" *(Matter of Swift v Swift,* 162 AD2d 784, 785).

In the case at bar, Family Court neither weighed the evidence nor resolved the questions of credibility created by the conflicting testimony. Instead, the court concluded: "I find nothing corollary to the child's testimony that would indicate that she is either telling the truth or telling a lie or has some misconceptions or misinterpretation of the events about which she testified. I have her testimony that they occurred, the father's testimony that they did not occur, and that is all I have. And on the basis of that I find that the petitioner has not sustained the petition."

To the extent that Family Court required corroboration of the 14-year-old child's sworn testimony in the form of something "corollary", it clearly erred, for no such corroboration is required *(see,* Family Ct Act § 1046; *cf., Matter of Fawn S.,* 123 AD2d 871). Family Court also erred in premising its conclusion on the theory that sworn testimony of incidents of abuse is insufficient to sustain the petition when the respondent testifies that the abuse did not occur. As previously explained, the conflicting testimony created questions of credibility which Family Court was required to decide *(see, Matter of Carine T.,* 183 AD2d 902). The child's testimony, if credited, was sufficient to establish the abuse alleged in the petition and, therefore, Family Court could not dismiss the petition unless it weighed the evidence and decided not to credit the child's testimony. Family Court, however, declared itself unable to decide who was telling the truth and solely on that basis dismissed the petition. Regardless of how difficult the credibility issue was to resolve, it was Family Court's obligation to do so as the trier of fact. In refusing to resolve the credibility issue presented by the conflicting testimony, Family Court failed to engage in the requisite fact finding and was therefore without power to dismiss the petition *(see, Matter of Rhonda T.,* 99 AD2d 758; *Matter of Charmine W.,* 61 AD2d 769).

Instead of remitting the matter to Family Court for the purpose of resolving the credibility issue on the basis of the

existing record, it is my view that a new hearing should be held. Approximately one year has elapsed since the original hearing was conducted, and Family Court's superior vantage point by virtue of being able to hear and observe the witnesses has obviously dissipated as a result of this passage of time. In these circumstances, and considering the importance of the interests at stake in this proceeding, it is my view that the appropriate remedy for Family Court's failure to engage in the requisite fact finding is to remit the matter for a new hearing.

WEISS, P. J., MIKOLL and YESAWICH JR., JJ., concur with LEVINE, J.; CASEY, J., concurs in a separate opinion.

Ordered that the order is reversed, on the law and the facts, without costs, and matter remitted to the Family Court of Chemung County for further proceedings not inconsistent with this Court's decision.