[1 NYS3d 893]

In the Matter of Naomi P. and Others, Children Alleged to be Abused and/or Neglected. Trinidad M., Respondent.

Family Court, Queens County, February 4, 2015

**APPEARANCES OF COUNSEL**

*Zachary W. Carter, Corporation Counsel*, New York City (*Alan W. Sputz* and *Dafna Schindler* of counsel), for Administration for Children's Services, petitioner.

*Center for Family Representation, Inc.*, Jamaica (*Amanda K. Franzen* of counsel), for respondent.

*Eugene F. Crowe*, Glendale, for David M. and others.

*Tamara A. Steckler, The Legal Aid Society*, New York City (*Karen Levit* of counsel), for Naomi P.

**OPINION OF THE COURT**

JOHN M. HUNT, J.

I

Respondent, Trinidad M., is the biological father of the

subject children, David, Gustavo and Vania, and the stepfather of the subject child, Naomi P.

Respondent has admitted to committing one or more sex offenses against Naomi, and the evidence establishes that he has not received professional treatment for pedophilia, "a condition the psychiatric profession itself classifies as a serious mental disorder" (*Kansas v Hendricks*, 521 US 346, 360 [1997]).

Petitioner, Commissioner of the New York City Administration for Children's Services (ACS), has filed child protective petitions on behalf of all four of the children, requesting that this court adjudicate Naomi to be an abused child and that her three half-siblings be adjudicated as abused or neglected children as defined by Family Court Act § 1012.

These cases were referred to this court for a fact-finding hearing (*see* Family Ct Act § 1044) and the hearing was conducted before this court on January 21 and January 22, 2015.

The significant portion of the evidence adduced at the fact-finding hearing is not in dispute. Maria P. is the biological mother of all four of the children who are the subjects of these proceedings: Naomi P. (born 1997), Gustavo M. (born 2003), Vania M. (born 2006) and David M. (born 2008). Maria P. is presently married to the respondent, Trinidad M., and Mr. M. is the biological father of the children Gustavo, Vania and David. Trinidad M. is the stepfather of Naomi P., who was born prior to his marriage to Maria P.

The four children, their mother Maria P., and the respondent, Trinidad M., resided together as a family at all times relevant to the allegations in these child protective proceedings. The parties stipulated that Trinidad M. is a "person legally responsible" for his stepdaughter, and based upon that stipulation and the evidence adduced at trial, this court determined that Trinidad M. was properly named as a respondent with respect to his three biological children (Family Ct Act § 1012 [a]), as well as with respect to his stepdaughter (Family Ct Act § 1012 [g]; *Matter of Yolanda D.*, 88 NY2d 790, 793-795 [1996]; *People v Carroll*, 93 NY2d 564, 568 [1999]; *Matter of Dior W. [Catherine W.]*, 105 AD3d 753 [2013]; *Matter of Emani W. [Owana E.]*, 107 AD3d 815, 816 [2013]; *Matter of Jonathan Kevin M. [Anthony K.]*, 110 AD3d 606 [2013]; *Matter of Jayline R. [Jose M.]*, 110 AD3d 419, 420 [2013]; *Matter of Kevin N. [Richard D.]*, 113 AD3d 524 [2014]; *Matter of Isaiah L. [Chris B.]*, 119 AD3d 797, 798 [2014]).

New York City Police Detective Josephine Lalli of the Queens Special Victims Squad, a 20-year veteran of the police service who has held the rank of detective for the past 17 years, was the mandated reporter who made the underlying report to the New York State Central Register of Child Abuse and Maltreatment (*see* Social Services Law §§ 413-416). Detective Lalli interviewed the subject child, Naomi P., on March 6, 2014 following Naomi's recent disclosure that she had been sexually violated some time ago by her stepfather, Trinidad M.

Detective Lalli commenced a criminal investigation and she learned that Naomi had disclosed to her then ex-boyfriend that her stepfather had sexually abused her in the past and Naomi's allegation was then redisclosed by the former boyfriend and it eventually came to the attention of law enforcement. Detective Lalli testified that she asked Naomi whether the former boyfriend's report of sexual abuse was correct and Naomi began to cry and she informed Lalli that her "father," Trinidad M., had "penis to vagina" sexual contact including intercourse with her when she was nine years old, and that the sexual contact continued on a once per month basis for a period until Naomi was 10½ to 11 years of age.

Naomi, who was then 16 years old, told Lalli that she had previously reported Trinidad's sexual abuse some time ago but she withdrew her allegations because "my mother did not believe me." Lalli learned that Naomi's prior disclosure had been investigated by detectives assigned to the Special Victims Squad but that no arrest was made and no prosecution commenced due to Naomi's retraction of her allegations against the stepfather. Naomi also told Detective Lalli that she had forgiven her "father," as he took care of the family and she was concerned about what would happen to her family if her "father" was arrested.

After speaking with Naomi, the respondent was taken into custody by the detectives and transported to the Queens Special Victims Squad office on Austin Street. As Mr. M. did not speak English, Detective Lalli interviewed respondent with the assistance of Detective Joseph Bey, who speaks English and Spanish. After advising respondent of his *Miranda* rights and informing him of Naomi's allegations, the respondent provided the detectives with a confession written in the Spanish language, a translation of which is in evidence along with the Spanish language version. In his written statement, which was witnessed by Detective Bey, Mr. M. admitted that

"I, Trinidad, touched N[ao]mi when she was 9 years old. It was only three times, I penetrated only a little because I was afraid. I touched her parts [sic] that time but nothing more . . . I touched and penetrated only once with the head of my penis. I touched her private parts three times with my fingers and I put N[ao]mi's hand on my penis those three [illegible] [sic] times. It happened when she was 9 years old and nothing else happened except those ones."

Detective Lalli brought the case to the attention of the District Attorney and according to the narrative of the State Central Register report made by Lalli, the respondent was going to be released from custody because the District Attorney's office had determined that all of the alleged acts had occurred more than five years previously and that prosecution was barred by the applicable statute of limitations (see Criminal Procedure Law § 30.10).[1]

The narrative portion of Detective Lalli's report to the State Central Register states, in pertinent part, that

"Trinidad . . . sexually abused 16 year old Naomi from the time she was 9 until she was 10.5 years old by forcing the child to have sexual intercourse with him [he] would have sexual intercourse with the child at least one time per month. . . . When Naomi was 8 [sic] years old she disclosed to her mother that [respondent] had touched her vagina."[2]

Detective Joseph Bey, who assisted Detective Lalli in the investigation conducted in May 2014, also testified at trial. Joseph Bey has been a New York City police detective for 12 years and he is presently a Detective Second Grade. Although assigned to the Queens Homicide Task Force, he assisted in the investigation of respondent's suspected sexual abuse of

---

1. "In New York, although class A felonies and four specified class B felony sex offenses have no limitations period, all other felonies are covered by a five-year statute of limitations. A two-year window applies to misdemeanors and petty offenses must be prosecuted within one year" (*People v Quinto*, 18 NY3d 409, 412 [2012] [citations omitted]).

2. The entire report transmitted by the State Central Register to the Administration for Children's Services was admitted into evidence (Family Ct Act § 1046 [a] [v]; *Matter of Shawn P.*, 266 AD2d 907, 908 [1999], *lv denied* 94 NY2d 760 [2000]; *Matter of Michael G.*, 300 AD2d 1144, 1145 [2002]; *Matter of Aaliyah Q.*, 55 AD3d 969, 971 [2008]; *Matter of Lauryn H. [William A.]*, 73 AD3d 1175, 1177 [2010]; *Matter of Samaj B. [Towanda H.-B.—Wade B.]*, 98 AD3d 1312, 1313-1314 [2012]).

Naomi at the request of a detective assigned to the Special Victims Unit at the 112th Precinct due to his proficiency in both the English and Spanish languages.

Detective Bey met with the respondent in an office at the Special Victims Unit located within the 112th Precinct beginning at 10:50 p.m. on March 6, 2014. Bey identified Trinidad M. as the individual he interviewed on March 6th. According to Bey, he asked respondent whether they could speak, he read the *Miranda* warnings to respondent in Spanish, and respondent told Bey that he was willing to speak with him about Naomi's allegation that he had "molested" her between 2007 and 2009. Detective Bey recalled that respondent "took a deep breath and said 'that did occur.'" Respondent told Bey that he had "molested" Naomi "three times when she was nine years old" and that these incidents occurred when his wife took their three biological children to church.

Respondent informed Bey that he had touched Naomi's "breast and private parts" and that "on one occasion he partially penetrated Naomi's vagina with the tip of his penis, but that he did not fully penetrate her and he ejaculated on a pillow on the bed that he and his wife sleep in." Respondent indicated that he did not attempt to completely penetrate Naomi's vagina because "it seemed painful" for the child, who was then nine years old. According to Detective Bey, the respondent could not remember the dates when he molested Naomi, although respondent thought that the incidents occurred "sometime in 2008-2009." Respondent was unable to recall exactly where in the home the other two incidents he admitted occurred. Respondent informed Bey that "he asked for forgiveness" and that "Naomi forgave" him.

Mr. M. wrote a statement about what had occurred between himself and his stepdaughter at the request of Detective Bey. The statement was written in Spanish and it was professionally translated into English for purposes of this trial. The written statement provided by respondent is set forth above. Detective Bey testified that respondent stated that he had been "drunk" on those Sunday mornings when he molested Naomi, but Bey noted that the respondent was sober and that he appeared normal on March 6th when he interviewed him. Although respondent claimed that he was remorseful after the incident involving his penetration of Naomi's vagina, this did not stop him from perpetrating further sexual contact on other occasions. According to Detective Bey, the respondent told him

that he kissed Naomi, touched her thighs, rubbed her vagina, and took her hand and placed it on his penis.

Tiffany Turnbull, the ACS caseworker assigned to conduct a child protective investigation after the agency received the report from the State Central Register, also testified at the hearing. Ms. Turnbull contacted Maria P. on March 10, 2014 and she proceeded to the family residence on that date. Turnbull met privately with Naomi, who was then 16 years old, and the child told Turnbull that her stepfather, Trinidad M., had sexually abused her on a regular basis when she was 8½ years old until she was 10 years old. Naomi told the caseworker that Trinidad had forced her to engage in sexual activity with him (i.e., "have sex") once per month and that these incidents occurred when her mother was not at home.

Turnbull asked Naomi about her disclosure of the sexual abuse made around 2006 which had led to an investigation by ACS, including a physical examination of Naomi, and the absence of Mr. M. from the family's home for "about two months." Naomi explained that she had disclosed the sexual abuse "a couple of years ago" but she then denied that it had happened because she was afraid that she would not be believed. Ms. Turnbull noted that Naomi told her that she also retracted her initial accusation of sexual abuse due to her concerns that her father might be taken away from the family. While the current disclosure was initiated by Naomi's former boyfriend, Naomi told Turnbull that she was relieved by the disclosure since her younger sister, Vania, was approaching the age when respondent began to sexually abuse her, and she did not want her sister to be sexually abused. Ms. Turnbull learned from Naomi and Ms. P. that after the initial disclosure of the sexual abuse, the mother took steps to ensure that her husband was never alone with the children.

Ms. Turnbull spoke with Trinidad M. on May 14, 2014. Turnbull noted that she was unable to locate the respondent when she was first assigned to investigate because she learned from the mother that the police had told her husband not to return home. Eventually Ms. Turnbull located respondent and they met at the supermarket where he is employed.

Ms. Turnbull spoke with respondent after he had been arrested and then released by the police after no charges had been brought. They communicated with a Spanish interpreter who had accompanied Ms. Turnbull into the field to investigate. Respondent indicated that he was aware of the allegations and

why she was investigating. Respondent told the caseworker that when Naomi was "10 years old" they were "playing a game and his penis accidentally grazed the child's vagina." He then decided to penetrate Naomi vaginally but he was unable to do so "because her vagina was tight." Respondent bizarrely told Ms. Turnbull that he thought that he could "have a relationship" with his 9 or 10-year-old stepdaughter but he eventually realized he was wrong and he apologized to Naomi. Mr. M. told the caseworker that he never touched Naomi again following her initial disclosure in or about 2006. When asked about his biological daughter Vania, the respondent informed Ms. Turnbull that he "never had feelings towards Vania" or words to that effect.[3]

Ms. Turnbull subsequently supervised visits between the respondent and his three biological children which occurred some time after he had removed himself from the family residence. Ms. Turnbull recalled that the older children, Gustavo and Vania, told her that they didn't actually know why their father was not home with them, although Gustavo, who was then seven years old, made a reference to "inappropriate behavior," although he made no comments indicating that he had knowledge of the specific behavior he referred to as inappropriate. Ms. Turnbull noted that the youngest child, David, would not speak with her.

According to Ms. Turnbull, Vania was "happy to see her father" at the visitation but Turnbull became unsettled when respondent picked Vania up and placed her on his lap and she told him to take her off of his lap. A second caseworker, Rhina Singleton, who was specifically assigned to assist in supervising visitation, also testified at length concerning the visits and about the one or two instances when the respondent picked Vania up and put her on his lap. This court draws no inference whatsoever from this particular encounter during supervised visitation as there is nothing unusual about the interaction between the father and Vania.

---

**3.** The court denied respondent's application for an order precluding Ms. Turnbull's testimony concerning his statements to her based upon an asserted failure of the petitioner to provide disclosure (*see* Family Ct Act § 1038 [b]). There was no indication that any delay in disclosure was intentional or motivated by bad faith. Moreover, preclusion of the evidence would negatively affect the rights of the subject children to have issues affecting their safety and best interests fully explored (*see Matter of Landrigen v Landrigen*, 173 AD2d 1011, 1012 [1991]; *Matter of Stukes v Ryan*, 289 AD2d 623, 624 [2001]; *Matter of Williams v Williams*, 35 AD3d 1098, 1100 [2006]; *Matter of Morrissey v Morrissey*, 124 AD3d 1367 [2015]).

Ms. Turnbull also indicated that when she spoke with Gustavo, who was born in November 2003, and was then in the fifth grade, the child told her that no one had ever touched him inappropriately and as far as he knew, no one else in his family had been touched inappropriately. David, although unwilling to speak with the caseworker, was a healthy five year old, and Vania, who was then seven years old, was healthy and she was able to identify her private parts and reported that she had never been touched inappropriately by anyone. Naomi told Ms. Turnbull that she wanted to receive "counseling" to address her feelings about the sexual abuse and she informed the caseworker that she had no interest in seeing "her father," Mr. M.

## II

"A child abuse or neglect proceeding under article 10 of the Family Court Act is a civil proceeding [brought] for the protection of the child alleged to be abused or neglected" (*People v Smith*, 62 NY2d 306, 309 [1984]; *see also Matter of Nicole V.*, 71 NY2d 112, 117 [1987]; *People v Roselle*, 84 NY2d 350, 355 [1994]; *Matter of Brianna L. [Marie A.]*, 103 AD3d 181, 186-187 [2012]; *Matter of Maria C. [Delilah C.]*, 118 AD3d 874 [2014]).

In order to obtain a finding of child abuse or neglect, the petitioner must establish the allegations in its petition by a preponderance of the evidence (Family Ct Act § 1046 [b] [i]; *Nicole V.*, 71 NY2d at 117; *Matter of Tammie Z.*, 66 NY2d 1, 3 [1985]; *Matter of Jahani K. [Felicia K.]*, 111 AD3d 832, 833 [2013]; *Matter of Eden S. [Joshua S.]*, 117 AD3d 1562, 1563 [2014]; *Matter of Ariel R. [Danielle K.]*, 118 AD3d 1010 [2014]; *Matter of Dylan G. [Victor M.]*, 119 AD3d 786, 787 [2014]; *Matter of Jerome S. [Tazine R.]*, 120 AD3d 1421, 1422 [2014]; *Matter of Joyitha M. [Reshmi M.]*, 121 AD3d 900, 901 [2014]; *Matter of Negus T. [Fayme B.]*, 123 AD3d 836 [2014]). This requires that the petitioner present proof that the allegations are "more likely than not to have occurred" (*Matter of Beautisha B. [Racquirine A.]*, 115 AD3d 854, 854 [2014]; *see also Matter of Jamie TT.*, 191 AD2d 132, 134 [1993]), or in other words "that the existence of a fact is more probable than the non-existence of that fact" (*United States v Littrice*, 666 F3d 1053, 1060 [7th Cir 2012] [citation omitted]; *see also United States v Orillo*, 733 F3d 241, 244 [2013]).

## A

"Because the accused parent is not subject to criminal sanctions in a child protective proceeding, the Legislature has provided that the usual rules of criminal evidence do not apply" (*Nicole V.*, 71 NY2d at 117). Instead, the statute contains special evidentiary provisions which apply in fact-finding hearings, including a hearsay exception which allows for the admission of a child's out-of-court statements relating to allegations of abuse or neglect (Family Ct Act § 1046 [a] [vi]; *Nicole V.*, 71 NY2d at 123; *Matter of Christina F.*, 74 NY2d 532, 536 [1989]; *Matter of Jada K.E. [Richard D.E.]*, 96 AD3d 744 [2012]; *Matter of Anthony S. [Dawn N.]*, 98 AD3d 519, 520 [2012]; *Matter of Joseph O'D. [Denise O'D.]*, 102 AD3d 874 [2013]; *Matter of Amber C. [Miguel C.]*, 104 AD3d 845 [2013]).

This evidentiary provision is of particular significance in a case such as this in which it is alleged that a child has been sexually abused by a family member. "Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim" (*Pennsylvania v Ritchie*, 480 US 39, 60 [1987]; *see also Matter of Philip M.*, 82 NY2d 238, 243 [1993]). Moreover, as "the child may be reluctant or unable to testify; and erroneous dismissal of the petition can have disastrous consequences" (*Christina F.*, 74 NY2d at 535; *see also Nicole V.*, 71 NY2d at 117), the statute further provides that "[t]he testimony of the child shall not be necessary to make a fact-finding of abuse or neglect" (Family Ct Act § 1046 [a] [vi]; *Matter of Christopher L.*, 19 AD3d 597 [2005]; *Matter of Imman H.*, 49 AD3d 879, 880 [2008]; *Matter of Sarah W. [Barbara G.F.]*, 122 AD3d 931, 932 [2014]).

While Family Court Act § 1046 allows for the admission of a child's out-of-court statements relating to abuse or neglect, the statute further provides that "if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect" (Family Ct Act § 1046 [a] [vi]). It has been observed that "[c]orroboration is not required because statements of children are generally unreliable but because the out-of-court statements are hearsay and the statute requires some further evidence to establish their reliability" (*Nicole V.* at 118; *see also Christina F.* at 536; *Matter of Amber C.* at 845; *Matter of Alexander M. [Benjamin M.]*, 88 AD3d 794, 795 [2011]; *Matter of Jada K.E. [Richard D.E.]*, 96 AD3d 744 [2012]; *Emani W.*, 107 AD3d at 816; *Matter of Alexis S. [Edward S.]*, 115 AD3d 866, 866-867 [2014]; *Matter of Katrina CC. [Andrew CC.]*, 118 AD3d

1064, 1065 [2014]; *Matter of David M. [Sonia M.-C.]*, 119 AD3d 800 [2014], *lv denied* 24 NY3d 989 [2014]; *Matter of Lylly M.G. [Theodore T.]*, 121 AD3d 1586, 1587 [2014], *lv denied* 24 NY3d 913 [2015]).

## B

■ In this case, respondent's confession to Detectives Bey and Lalli that he had engaged in sexual conduct with Naomi beginning when she was nine years old, and his similar statements to ACS caseworker Tiffany Turnbull, were admitted into evidence. An admission of material facts by a party always constitutes competent evidence against him (*People v Chico*, 90 NY2d 585, 589 [1997]; *People v Caban*, 5 NY3d 143, 151 [2005]; *People v Case*, 113 AD3d 872, 873 [2014], *lv denied* 23 NY3d 961 [2014]; *People v Moore*, 118 AD3d 916, 918 [2014], *lv denied* 24 NY3d 1086 [2014]).[4] Respondent's statements are sufficient to establish that he sexually abused Naomi when she was between age 9 and age 10½ or 11, and his statements further serve as corroboration for the child's out-of-court statements relating to that sexual abuse (*Matter of Dave D. [Jean D.]*, 71 AD3d 673, 674 [2010]; *Matter of Joshua J.P. [Deborah P.]*, 105 AD3d 552 [2013]; *Matter of Genesis F. [Xiomaris S.]*, 121 AD3d 526 [2014]).[5]

The court has considered the child's past recantation of her initial allegations against her stepfather, the evidence introduced to explain that recantation, and the fact that Naomi made a subsequent disclosure of the sexual abuse which led to the filing of these petitions. Naomi's retraction of her initial allegations presented nothing more than an issue of credibility which this court has resolved in favor of the petitioner (*see Matter of Kayla N.*, 41 AD3d 920, 922-923 [2007]; *Matter of Caitlyn U.*, 46 AD3d 1144, 1146-1147 [2007]; *Matter of Tristan R.*, 63 AD3d 1075, 1077 [2009]; *Matter of Melody H. [Dwayne*

---

**4.** Because these are child protective proceedings, the exclusionary rule is deemed to be inapplicable (*Matter of Diane P.*, 110 AD2d 354, 356 [1985], *appeal dismissed* 67 NY2d 918 [1986]; *Matter of Anne BB.*, 202 AD2d 806, 808 [1994]). There was no requirement that the petitioner demonstrate that respondent's statements to the police and to the ACS caseworker were voluntarily made as a prerequisite to their admission into evidence (*see generally People v Thomas*, 22 NY3d 629, 641 [2014]).

**5.** There is no doubt that the respondent committed multiple sex offenses against Naomi for his own sexual gratification (*see Matter of Olivia YY.*, 209 AD2d 892 [1994]; *Matter of Shannon K.*, 222 AD2d 905, 906 [1995]; *Matter of Daniel R. [Lucille R.]*, 70 AD3d 839, 840 [2010]; *Matter of Amparo B.T. [Carlos B.E.]*, 118 AD3d 809, 811 [2014]).

*H.J*, 121 AD3d 686, 687 [2014]; *Matter of Tiarra D. [Philip C.]*, 124 AD3d 973 [2015]).

Accordingly, based upon the evidence adduced by the petitioner and the attorneys for the children in their roles as their advocates (*Jamie TT.*, 191 AD2d at 136-137; *Matter of Tiajianna M.*, 55 AD3d 1321, 1322 [2008]), and taking a negative inference against the respondent based upon his failure to testify (*Matter of Commissioner of Social Servs. v Philip De G.*, 59 NY2d 137, 141 [1983]; *Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73, 79 [1995]; *Matter of Clarissa S.P. [Jaris S.]*, 91 AD3d 785, 786 [2012]; *Matter of Joseph P. [Cindy H.]*, 112 AD3d 553, 554 [2013]; *Matter of Anthony M.C. [Patrick M.J.]*, 119 AD3d 781, 782 [2014]; *Matter of Dean J.K. [Joseph D.K.]*, 121 AD3d 896, 897 [2014]; *Matter of Jackson F. [Gabriel F]*, 121 AD3d 1114, 1115 [2014]),[6] this court finds that respondent committed three felony sex offenses against Naomi: rape in the first degree (Penal Law § 130.35 [3], [4]);[7] sexual abuse in the first degree (Penal Law § 130.65 [3], [4]); and course of sexual conduct against a child in the first degree (Penal Law § 130.75 [1] [a]).[8]

## C

In making the findings required by Family Court Act § 1051 (a) and (e) with respect to the child Naomi P., this court has rejected respondent's argument that the child protective peti-

---

**6.** Respondent argued that the adverse inference, while permissible, could not be used to establish corroboration where it does not otherwise exist (*e.g. Matter of Iyonte G. [Charles J.R.]*, 82 AD3d 765, 767 [2011]). In this case, respondent's admissions provide overwhelming corroboration for Naomi's out-of-court statements (*Nicole V.*, 71 NY2d at 119; *Christina F.*, 74 NY2d at 536; *Matter of Alexis S. [Edward S.]*, 115 AD3d 866, 867 [2014]; *Matter of Victoria P. [Victor P.]*, 121 AD3d 1006, 1007 [2014]).

**7.** For purposes of article 130 of the Penal Law, the term "sexual intercourse" has its "ordinary meaning and occurs upon *any penetration, however slight*" (Penal Law § 130.00 [1] [emphasis added]).

**8.** Pursuant to Penal Law § 130.75, a person is guilty of the class B felony of course of sexual conduct against a child in the first degree "when, over a period of time not less than three months in duration: (a) he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse . . . with a child less than eleven years old" (Penal Law § 130.75 [1] [a]). "Sexual conduct" is defined as "sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact, or sexual contact" (Penal Law § 130.00 [10]), and "sexual contact" is defined, insofar as relevant, as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor" (Penal Law § 130.00 [3]).

tions filed as to all four children should be dismissed due to the passage of time since the last act of sexual abuse was committed.

Child protective proceedings are "specifically designed to protect children from injury, abuse or mistreatment, and to help safeguard their physical, mental and emotional well-being" (*Matter of Sayeh R.*, 91 NY2d 306, 313 [1997]; *see also Nicole V.*, 71 NY2d at 117; *Yolanda D.*, 88 NY2d at 795), and dismissal of such cases based upon a claim that there has been an inordinate delay in commencing the proceedings is both unauthorized by statute as well as inappropriate (*Matter of Eden S. [Joshua S.]*, 117 AD3d 1562, 1562-1563 [2014], *lv denied* 24 NY3d 906 [2014]; *see also Matter of Kristina R.*, 21 AD3d 560, 563 [2005]; *Matter of Asianna NN. [Kansinya OO.]*, 119 AD3d 1243, 1246 [2014]).

Respondent escaped criminal prosecution for the sex offenses he committed against Naomi for reasons not fully explained to this court, although apparently related to the statute of limitations applicable to criminal prosecutions or perhaps speedy trial issues. However, the failure to prosecute him criminally does not mandate dismissal of these proceedings (*Matter of Joseph DD.*, 300 AD2d 760, 766 [2002], *lv denied* 100 NY2d 504 [2003]; *see also Matter of Kristina R.*, 21 AD3d 560, 563 [2005]; *Matter of Asianna NN. [Kansinya OO.]*, 119 AD3d 1243, 1246 [2014]), which were commenced within the time period specified by Family Court Act § 1013 (c) (*Matter of Sheena B. [Rory F.]*, 83 AD3d 1056, 1058 [2011]; *Matter of Mylasia P. [Brenda P.]*, 104 AD3d 856 [2013]; *Matter of Amondie T. [Karen S.]*, 107 AD3d 498, 499 [2013]).

## D

Critically, neither the passage of time since the last acknowledged act of sexual abuse nor the failure to prosecute respondent criminally eradicates the harm which respondent's inexcusable actions have caused, nor the risk of harm he poses to all four of the children in the home.

Trinidad M. is an admitted pedophile who has never received medical treatment for that mental disorder, notwithstanding the passage of time he has cited in another context in this case. "[T]he Diagnostic and Statistical Manual of Mental Disorders (DSM), an authoritative text widely used in the mental health profession" (*Matter of State of New York v Shannon S.*, 20 NY3d 99, 104 [2012]), classifies pedophilia as a

mental disorder that involves sexual activity with prepubescent children (American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 302.2 [4th ed Text Rev 2000]), and pedophilia is recognized to be "a serious mental disorder" (*Hendricks*, 521 US at 360; *see also Kansas v Crane*, 534 US 407, 414 [2002] [pedophiles are aroused by or act upon sexual urges toward children]; *Matter of State of New York v Pierce*, 79 AD3d 1779, 1779-1780 [2010], *lv denied* 16 NY3d 712 [2011]).

Sex offenders as a class are deemed dangerous and their risk of recidivism is extremely high (*McKune v Lile*, 536 US 24, 32-33 [2002]; *Smith v Doe*, 538 US 84, 103 [2003]). A pedophile, such as the respondent, who believed that he "could have a [sexual] relationship" with his nine-year-old stepdaughter, poses a serious risk to public safety, especially to young children who are vulnerable and unable to protect themselves (*see People v Seils*, 28 AD3d 1158 [2006], *lv denied* 7 NY3d 709 [2006]; *People v Collins*, 104 AD3d 1220, 1221 [2013], *lv denied* 21 NY3d 855 [2013]; *People v May*, 77 AD3d 1388 [2010]; *Matter of State of New York v Bass*, 119 AD3d 1356, 1357 [2014], *lv denied* 24 NY3d 908 [2014]; *Doe v Sex Offender Registry Bd.*, 447 Mass 750, 760, 857 NE2d 473, 480-481 [2006]; *State v Purser*, 153 Ohio App 3d 144, 152, 791 NE2d 1053, 1059 [2003]; *State v Parker*, 329 P3d 1253 [Kan App 2014] [table; text at 2014 WL 3843074, *11, 2014 Kan App Unpub LEXIS 619, *25-26 (2014)]).[9]

■ The evidence of respondent's felonious and protracted sexual abuse of Naomi is admissible on the issue of whether Naomi's three younger siblings are abused or neglected children (Family Ct Act § 1046 [a] [i]; *Matter of Amber C.*, 38 AD3d 538, 540 [2007], *lv denied* 8 NY3d 816 [2007], *lv dismissed* 11 NY3d 728 [2008]; *Matter of Harmony M.E. [Andre C.]*, 121 AD3d 677, 679 [2014]).

The court has considered the evidence which includes respondent's rape and sexual abuse of Naomi beginning when she was nine years old, that the sexual abuse occurred in secret on a monthly basis over a period of approximately two years, that the sexual abuse stopped only when Naomi initially disclosed

---

**9.** Notably, under the New York Sex Offender Management and Treatment Act, pedophiles may be civilly confined as dangerous sex offenders (*Matter of State of New York v Walter W.*, 94 AD3d 1177, 1178 [2012]; *Matter of State of New York v R.W.*, 99 AD3d 1010, 1011 [2012]; *Matter of State of New York v Angel P.*, 116 AD3d 1054, 1055-1056 [2014]).

it to others and there was an official investigation. The court has further considered the fact that respondent has never sought or obtained professional medical treatment for his mental disorder, and that the mother of the children has found it advisable to closely supervise respondent's interaction with all four of the children since the abuse was first disclosed by Naomi some years ago.

Respondent's out-of-court statements relating to his alleged ability to restrain his compulsion to engage in sexual acts with young children was not supported by any reliable evidence, nor was his self-reported ability to refrain from committing acts of sexual abuse subjected to cross-examination at the fact-finding hearing. In any event, respondent's unsworn assertion that he has not committed any further sex offenses within the family since Naomi's initial disclosure does not conclusively establish that he has not committed any sex offenses at all since that time, nor is it dispositive on the issue of whether his untreated mental disorder continues to pose a threat to children who live with him (*see Matter of State of New York v Larry B.*, 113 AD3d 865, 866 [2014], *lv denied* 22 NY3d 866 [2014]).

> "Even in the absence of direct evidence of actual abuse or neglect of a second child, a derivative finding of neglect should be made where the evidence as to the directly abused or neglected child demonstrates such an impaired level of parental judgment as to create a substantial risk of harm for any child in their care, thereby making such a child neglected under Family Court Act § 1012 (f) (i) (B)" (*Amber C.*, 38 AD3d at 540 [citations omitted]; *see also Matter of Dutchess County Dept. of Social Servs. v Douglas E.*, 191 AD2d 694, 695 [1993]).

Respondent's depraved sexual abuse of his stepdaughter, who considered him to be her father, and the lack of treatment for his psychological disorder, clearly demonstrates that respondent's defective understanding of the duties of parenthood and impaired parental judgment creates a substantial risk of harm for the three younger children in the home, and respondent's lack of impulse control presents a danger to any child under his care. Therefore, this court has little difficulty determining that the children David, Gustavo and Vania M. are neglected children (*Matter of Ian H.*, 42 AD3d 701, 704 [2007], *lv denied* 9 NY3d 814 [2007]; *Matter of Brian I.*, 51 AD3d 792, 793 [2008]; *Matter of Lauryn H. [William A.]*, 73 AD3d 1175, 1177 [2010]; *Matter of Kyanna T. [Winston R.]*, 99

AD3d 1011, 1013-1014 [2012], *lv denied* 20 NY3d 856 [2013]; *Matter of Leah R. [Miguel R.]*, 104 AD3d 774 [2013]; *Matter of Angelica M. [Nugene A.]*, 107 AD3d 803, 804-805 [2013]; *Matter of Michael U. [Marcus U.]*, 110 AD3d 821, 822 [2013]; *Matter of Jeremiah I.W. [Roger H.W.]*, 115 AD3d 967, 969 [2014]; *Matter of William N. [Kimberly H.]*, 118 AD3d 703, 705-706 [2014]; *Matter of Linda F. [Jose F.]*, 119 AD3d 944, 946 [2014]; *Harmony M.E.*, 121 AD3d at 679; *Matter of Ebony S. [Earlind G.]*, 123 AD3d 1136, 1136-1137 [2014]).

Respondent's assertion that dismissal of the proceedings concerning the children David, Gustavo and Vania is mandated by the decision in *Matter of Afton C. (James C.)* (17 NY3d 1 [2011]) is misplaced.

Critically, the facts of *Afton C.* are distinguishable from the facts presented here. *Afton C.* addressed whether a finding of neglect could be premised on the fact that the parents, one of whom was a convicted and untreated sex offender, continued to reside with the mother and their five children. The Court held that there is no "presumption that an untreated sex offender residing with his or her children is a neglectful parent . . . [e]ven where . . . the offender's crimes involve victims younger than 18" (17 NY3d at 10). *Afton C.* involved sex offenses perpetrated by the father against a stranger, while these cases involve *intrafamilial* sexual abuse perpetrated by a father with an untreated mental disorder against a young child who resides with him and the child's siblings. Significantly, the investigating caseworker in *Afton C.* "acknowledged that he had no evidence that [the] father was sexually inappropriate with any of the subject children" (*id.* at 7).

*Afton C.* clearly does not stand for the proposition that a court may never give any weight to the fact that children are residing in a home with a convicted sex offender (*e.g. Matter of Nikole S. v Jordan W.*, 123 AD3d 497 [2014]). Moreover, unlike *Afton C.*, this court is clearly not relying solely upon respondent's "sex offender status and prior conviction" (*see Matter of Michaellica Lee W.*, 106 AD3d 639, 640 [2013]), inasmuch as the respondent has never been convicted of a sex offense nor adjudicated to be a "sex offender" under SORA. Rather, in these cases, the court has assessed whether the respondent poses an imminent risk of harm to the three younger children based upon *all* of the evidence adduced concerning his commission of sex offenses against Naomi, a subject child who is the stepdaughter of the perpetrator, the circumstances under which those acts

were committed, and what transpired in the time since the abuse was committed (*see Matter of Lillian SS. [Brian SS.]*, 118 AD3d 1079, 1080 [2014], *lv dismissed* 24 NY3d 936 [2014]; *Matter of Gianna O. [Donald P.]*, 123 AD3d 1168, 1169 [2014]).[10] Based upon all of the above, this court concludes that respondent presents an imminent and substantial risk of harm to David, Gustavo and Vania.

Accordingly, in accordance with Family Court Act § 1051 (a), it is hereby adjudged, that respondent has sexually abused the child Naomi P. within the meaning of Family Court Act § 1012 (e) (iii), by virtue of his commission of those sex offenses specified in this decision; and it is further adjudged, that the children David M., Gustavo M. and Vania M., are found to be neglected children within the meaning of Family Court Act § 1012 (f) (i) (B) for the reasons stated herein.

---

**10.** As observed by Judge Graffeo,"this is not an area of law amenable to bright-line rules. Rather, whether neglect has been established during a proceeding turns on the particular facts and circumstances proven at the hearing" (*Afton C.*, 17 NY3d at 11 [Graffeo, J., concurring]). Judge Graffeo further noted that the petitioner in that case presented no evidence relating to how the underlying criminal acts were committed, no evidence relating to the hearing conducted under the SORA, and no "evidence, expert or otherwise, explaining how the father's criminal history indicated that he posed a risk of harm to his children" (*id.* at 12).