Matter of Michael H. (Catherine I.) (2023 NY Slip Op 01119)

Matter of Michael H. (Catherine I.)

2023 NY Slip Op 01119

Decided on March 2, 2023

Appellate Division, Third Department

Clark, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 2, 2023

534008

[*1]In the Matter of Michael H., Alleged to be a Permanently Neglected Child. Delaware County Department of Social Services, Appellant; Catherine I., Respondent.

Calendar Date:January 17, 2023

Before: Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

Amy B. Merklen, County Attorney, Delhi (D. Jeremy Rase of counsel), for appellant.

Clark, J.
Appeal from an order of the Family Court of Delaware County (Gary A. Rosa, J.), entered August 31, 2021, which, in a proceeding pursuant to Social Services Law § 384-b, denied petitioner's motion to modify a prior order.
Respondent is the mother of the subject child (born in 2008).[FN1] In August 2019, petitioner commenced a proceeding pursuant to Family Ct Act article 10 alleging that respondent had abused and neglected the child and respondent consented to the child's placement in petitioner's care. In July 2020, respondent admitted to neglecting the child, and the child remained in care. Then, in December 2020, petitioner filed a petition alleging that respondent had permanently neglected the child and seeking to terminate her parental rights. Respondent thereafter filed an application to execute a conditional surrender of her parental rights of the child and, in July 2021, during a court appearance, the parties began to execute respondent's conditional surrender. However, following a request by the attorney for the child (hereinafter AFC), Family Court suspended the proceedings to allow the AFC an opportunity to speak with the child about the judicial surrender and a potential subsequent adoption. The AFC also made a verbal application to prohibit petitioner from speaking to the child about the matters of adoption or surrender. Over petitioner's objection, Family Court granted the AFC's request and issued a written order, dated July 13, 2021, "that no one is to discuss the matters of adoption or surrender with [the child] . . . except for the [AFC]." Soon after, petitioner moved to modify the order, which motion the AFC opposed. Family Court denied the motion, and petitioner appeals.[FN2]

During the pendency of this appeal, petitioner withdrew the permanent neglect petition against respondent.[FN3] Such withdrawal led to the vacatur of the underlying order and, as a result, the instant appeal is moot. However, we find that the appeal presents a question that "is substantial, novel and likely to recur, yet evade review, so as to warrant invocation of the mootness exception" (Matter of Marcus TT. [Markus TT.], 188 AD3d 1461, 1462 [3d Dept 2020]; see Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]). The question presented — whether Family Court may, upon request by an AFC, prohibit a child protective agency from discussing the issues of surrender and adoption with a child in its custody — is substantial and novel. Further, given Family Court's expressed view that this type of order is akin to a Family Ct Act article 6 order directing parents to refrain from discussing court matters with their children, and because judicial surrenders of parental rights are, by nature, done on consent, the issue presented is likely to recur, yet evade appellate review. As a result, the mootness exception applies (see Matter of Frank Q. [Laurie R.], 204 AD3d 1331, 1332-1333 [3d Dept 2022]; Matter of Heaven C. [Julia B.], 71 AD3d 1301, 1302 [3d Dept 2010]).
Turning [*2]to the merits, petitioner argues that the order directing it to refrain from speaking with the child about surrender or adoption prevents it from fulfilling its statutory and regulatory obligations, places an undue restraint on its constitutional mandates and violates the separation of powers doctrine.[FN4] The AFC contends that discussing the legal topics of adoption and surrender are the duties of the AFC, not petitioner's caseworkers. The question on appeal involves the intersection between an attorney for children's representation of their child-client and a child protective agency's duty to that same child. As such, we must weigh the corresponding interests at issue.
A child protective agency, such as petitioner, has "constitutional and statutory obligations toward children in its custody" (Matter of Cristella B., 77 AD3d 654, 656 [2d Dept 2010]; see NY Const, art XVII, § 1). As relevant here, child protective agencies have "a duty to conduct family assessments and to develop a plan of services 'made in consultation with the family and each child over 10 years old, whenever possible' " (Matter of Cristella B., 77 AD3d at 656, quoting 18 NYCRR 428.6 [a] [1] [vii]). To this end, a child protective agency must "provide casework contact services" to, among others, children under its care (18 NYCRR 441.21 [a]). "The purpose of the contacts is to assess the child's current safety and well-being, to evaluate or reevaluate the child's permanency needs and permanency goal, and to guide the child towards a course of action aimed at resolving problems of a social, emotional or developmental nature that are contributing towards the reason(s) why such child is in foster care" (18 NYCRR 441.21 [c] [1] [emphasis added]). Further, permanency hearings were established "to provide children placed out of their homes timely and effective judicial review that promotes permanency, safety and well-being in their lives" (Family Ct Act § 1086). Permanency for a child can be achieved in several ways including, but not limited to, return to a parent or parents, adoption, independent living, suitable alternative living arrangements with a relative or a guardianship proceeding (see Family Ct Act § 1089 [c] [1]). Under this statutory and regulatory scheme, child protective agencies and their caseworkers have an obligation to discuss matters of permanency, which include adoption, with the child (see Family Ct Act§ 1089 [c]; 18 NYCRR 441.21 [c] [1]; 428.6). A caseworker's discussions with a child in care about adoption become particularly important with a child approaching the age where his or her consent will be required to proceed to an adoption (see Domestic Relations Law § 111 [1] [a]; Matter of Gena S. [Karen M.], 101 AD3d 1593, 1595 [4th Dept 2012], lv dismissed & denied 21 NY3d 975 [2013]).
Attorneys for children play a critical and undeniably integral role in Family Court proceedings and in ensuring child welfare (see 22 NYCRR 7.2; see e.g. Matter of Jennifer VV. v [*3]Lawrence WW., 182 AD3d 652, 653-655 [3d Dept 2020]; Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1297 [3d Dept 2017]). Indeed, children who are the subject of proceedings to terminate their parents' parental rights have "a constitutional as well as a statutory right to legal representation of [their] interests in the proceedings" (Matter of Jamie TT., 191 AD2d 132, 136 [3d Dept 1993]; see Family Ct Act § 241; Matter of Aniya L. [Samantha L.], 124 AD3d 1001, 1002 [3d Dept 2015], lv denied 25 NY3d 904 [2015]). Among many responsibilities, attorneys for children are required "to help protect their [child-clients'] interests and to help them express their wishes to the court" (Family Ct Act § 241; see 22 NYCRR 7.2 [d]; Silverman v Silverman, 186 AD3d 123, 125-126 [2d Dept 2020]; Matter of Jennifer VV. v Lawrence WW., 182 AD3d at 653-654), and they are bound to advocate their child-client's position, except in limited circumstances (see 22 NYCRR 7.2 [d] [2]-[3]). Further, attorneys for children are bound by ethical requirements applicable to all lawyers (see 22 NYCRR 7.2 [b]) and must provide their clients with meaningful representation (see Matter of Emmanuel J. [Maximus L.], 149 AD3d at 1297; Matter of Alyson J. [Laurie J.], 88 AD3d 1201, 1203 [3d Dept 2011], lv denied 18 NY3d 803 [2012]).
The record reveals that, at some point during the termination proceedings against respondent, the AFC and petitioner became adversaries, rather than working together toward a joint goal of helping the child. During the judicial surrender appearance, the AFC requested that Family Court issue an order that, "until I've spoken to [the child], no one is to speak to [the child] about surrender and adoption." Although we recognize that circumstances may arise where it may be appropriate to allow an attorney for children reasonable time to discuss sensitive matters of importance, such as adoption or surrender, with their child-client before anyone else does, Family Court's order was not a temporal arrangement to allow the AFC an opportunity to broach the issue with the child. Instead, the order was an outright ban on anyone, including petitioner's caseworkers, having a discussion with the child regarding issues that are central to the child's permanency (see Family Ct Act § 1089 [c] [1] [ii]).
Although Family Court attempted to differentiate the issues of surrender and adoption as "a legal issue distinguishable from the assessment of the child's well-being," the court construed the issues pertaining to the child's well-being too narrowly, leaving petitioner in an untenable situation.[FN5] According to petitioner, for over a year, it was prevented "from speaking with the child to reassess its understanding of the child's wishes" relative to respondent's possible conditional surrender and a subsequent adoption of the child — issues that fall squarely into the category of permanency decisions. Although the child has a right to meaningful representation and to learn about [*4]legal issues from the AFC (see Family Ct Act § 241; Matter of Emmanuel J. [Maximus L.], 149 AD3d at 1297), attorneys for children cannot transform such responsibility into a roadblock, as occurred here, preventing petitioner from fulfilling its mandates and planning for the child's permanency and well-being (see 18 NYCRR 428.6; 441.21). Therefore, we find that Family Court erred when, through the order on appeal and through the July 2021 order, it interfered with petitioner's statutory obligations and responsibilities.[FN6]

Garry, P.J., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, petitioner's motion to modify the July 13, 2021 order granted, and the July 13, 2021 order is vacated.

Footnotes

Footnote 1: The child's father is deceased.

Footnote 2:Although petitioner failed to seek permission to appeal from a nondispositional order, and the AFC argued for dismissal of the appeal, we invoke our discretion to accept petitioner's notice of appeal as a request for permission to appeal and grant the same (see Family Ct Act § 1112 [a]; Matter of James R. v Jennifer S., 188 AD3d 1509, 1510 n 1 [3d Dept 2020]).

Footnote 3: After the AFC notified this Court about the withdrawal, we asked the parties to advise on the effect of the withdrawal on the instant appeal. Petitioner filed an additional submission but failed to address the question of mootness, instead explaining the factual scenario surrounding its withdrawal of the permanent neglect petition. Despite the AFC's initial arguments in favor of dismissal of the appeal, the AFC noted that the appeal might be moot but argued in favor of application of the mootness exception.

Footnote 4: Respondent has not appeared on this appeal.

Footnote 5: We agree with Family Court's statements that no one should attempt to influence or persuade the child's decision-making and wishes, but, rather than issuing a general admonition or a gentle reminder to refrain from such conduct, the court issued an inappropriate blanket prohibition.

Footnote 6:Although petitioner's motion sought to modify the July 2021 order, we note that said order's sole term was the prohibition addressed herein. As a result, the only appropriate remedy, upon our reversal of the order on appeal, is the vacatur of the July 2021 order.